UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| Hugh A. Carithers and Katherine, S. Carithers, | Case No. 3:12-cv-890 |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Mid-Continent Casualty Company, | |
| Defendant. | |

The Court held a bench trial in this matter on February 11 and 12, 2014. The only question at issue is whether Defendant Mid-Continent Casualty Company had the duty to indemnify its insured for the damage caused to Plaintiffs' residence. In the following findings of fact and conclusions of law the Court determines that Defendant had the duty to indemnify its insured.

**FACTS**

From April 2004 to June 2005, homebuilder Cronk Duch Miller & Associates, Inc., its related entities,[1] and various subcontractors built a home in Atlantic Beach, Florida, for Plaintiffs Hugh and Katherine Carithers. Beginning in March 2005, Cronk Duch was insured under a Commercial General Liability insurance policy issued by Defendant Mid-Continent

---

[1] Those entities are Cronk Duch Architecture, LLC, Cronk Duch Craftsmen, LLC, Joseph S. Cronk, Cronk Duch Partners, LLC, and Cronk Duch Holdings, Inc. The Court will refer to these related entities as Cronk Duch.

Casualty Company. (Def.'s Ex. 7 (2005-2006 Policy).)

Shortly after Plaintiffs moved to the home, things were not as they should be. Brand-new ceiling fans stopped working, the tile patio began to crack, and coating applied to the brick exterior of the home began to fade. Not until 2010, however, when Plaintiffs first noticed water damage inside their garage did Plaintiffs understand that all of the home's problems were due to negligent construction. (Tr. at 53.) In 2010, Plaintiffs consulted with a general contractor named Brian Wingate. (Id. at 52.) He examined the home and concluded that Cronk Duch's subcontractors had performed their duties negligently in four ways: first, the subcontractors had installed the tile with inadequate adhesive and over an inadequate base, which caused the tile to crack (id. at 82); second, the subcontractors had not installed any surge protection in the home's electrical system, causing appliance motors to burn out prematurely (id. at 86); third, the exterior brick coating had been applied incorrectly, causing the coating to wash off and permanently damaging the brick (id. at 87-88); and finally, a balcony attached to the garage had been defectively constructed, allowing water to seep into the ceiling and walls of the garage and causing wood rot in the structure (id. at 76 et seq.). According to Mr. Wingate, all of the damage began to occur almost immediately after the home's construction in 2005. (Id. at 104.) Plaintiff Hugh Carithers's unrebutted testimony was that the tile, balcony, electrical, and Boral coating were all items completed toward the end of construction, in the spring of 2005. (Id. at 30, 65-66.)

Plaintiffs brought a state-court lawsuit against Cronk Duch, seeking to recoup the cost

of repairing the damage the subcontractors wrought. (Def.'s Ex. 1 (3rd Am. Compl. in Carithers v. Cronk Duch Miller & Assocs., 2011-CA-002429 (Fla. 4th Cir. Ct.)).) Cronk Duch tendered the lawsuit to Mid-Continent, but Mid-Continent refused to provide a defense to Cronk Duch. Plaintiffs and Cronk Duch ultimately entered a consent judgment of slightly more than $90,000 (Pls.' Ex. 1), with Cronk Duch assigning Plaintiffs its rights against Mid-Continent. (Pls.' Ex. 3.)

Plaintiffs then brought this lawsuit, and cross-Motions for Summary Judgment followed. The only issue the Motions addressed was whether Mid-Continent had the duty to defend Cronk Duch in Plaintiffs' state-court case. The Court determined that the relevant trigger for damage was the injury-in-fact trigger, and therefore that the damages occurred for purposes of the insurance policy in 2005. (Mem. Op. & Order (Docket No. 97) at 4.) The Court concluded that Mid-Continent had the duty to defend its insured in the state-court litigation. (Id. at 5.)

**DISCUSSION**

**A.     When did the damage occur?**

In ruling on the parties' cross-summary-judgment motions, the Court held that damage "'occurs' at the moment that there is actual damage and the date of discovery [of the damage] is irrelevant." (Id. at 4 (quoting Axis Surplus Ins. Co. v. Contravest Constr. Co., No. 6:11-cv-320, 2012 WL 2048303, at *7 (M.D. Fla. June 5, 2012) (Antoon, J.)). Although the Court's determination on this issue was necessarily preliminary, nothing in the evidence

presented at the bench trial established to the contrary. Mid-Continent presented no evidence on this issue, and the testimony from Plaintiffs' witnesses established unequivocally that actual damage occurred to Plaintiffs' residence almost immediately after construction was complete. Absent any evidence to establish a different date of damage, the Court will stand by its previous determination that the relevant damage for purposes of determining the duty to indemnify occurred in 2005.

This determination is significant, because it means that Mid-Continent's 2005-2006 policy is the operative policy for determining whether the damage at issue falls within the policy's coverage. It is undisputed that this 2005-2006 policy did not contain any exclusion for work done by subcontractors, which the parties refer to as the 2294 endorsement. The 2294 endorsement is included in later policies Mid-Continent issued to Cronk Duch, but is not found in the 2005-2006 policy.

**B.     Duty to Indemnify**

While the duty to defend is determined by the allegations in the underlying complaint, the duty to indemnify is determined by the underlying facts of the case compared to the policy coverage. Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009) (Presnell, J.), see also State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1077 n.3 (Fla. 1998). The party seeking indemnity has the burden to prove that the settlement represented costs that fell within the insurance policy or policies at issue. Keller Indus., Inc. v. Employers Mut. Liab. Ins. Co. of Wis., 429 So. 2d 779, 780 (Fla. Dist. Ct. App. 1983).

The policy Mid-Continent issued to Cronk Duch for the period March 9, 2005, to March 9, 2006, is found in the record at Defendant's Exhibit 7. For ease of reference, the Court will refer to this Exhibit as the "Policy," and it is, as noted above, the only relevant policy for determining Mid-Continent's duty to indemnify in this matter.

The Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Policy § I.1.a.) The Policy defines "property damage" as "[p]hysical injury to tangible property including all resulting loss of use of that property." (Id. § V.17.a.) The Policy excludes from coverage "'[p]roperty damage to "your work" arising out of it or any part of it and included in the products-completed operations hazard." (Id. §I.2.*l*.) This exclusion is known as the "your work" exclusion. However, the "your work" exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Id.)

The Policy also excludes from coverage

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Id. § I.2.j.) However, paragraph 6 "does not apply to "property damage" included in the "products-completed operations hazard." (Id.)

The "products-completed operations hazard" is defined to include

5

all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(Id. § V.16.) Thus, the Policy provides coverage for damage caused by a subcontractor's negligent work, but does not provide coverage for the repair of the negligent work itself.

There is no serious dispute here that the subcontractors' negligent work on Plaintiffs' home was an "occurrence" under the Policy that caused "property damage."[2] The question

---

[2] One of Plaintiffs' witnesses, Brett Douglas, testified that the wood rot in Plaintiffs' garage developed because the water incursion allowed microscopic "critters" such as fungi to grow in the wood. (Tr. at 113.) Mid-Continent then argued that the Policy would exclude coverage for damage to the garage because the Policy contains a "Fungus, Mildew and Mold Exclusion." (Policy at ML 12 17 (04 01).) But Mid-Continent has been aware since the inception of this matter that the damage to the garage was caused by wood rot, which is by definition "decomposition from the action of bacteria or fungi." Definition of verb "rot," www.merriam-webster.com/dictionary/rot (last visited March 3, 2014). Mid-Continent cannot now rely on an exclusion that it has never before mentioned in this litigation. See Fla.

is whether only part of Plaintiffs' claimed damages or all of those damages constitute "property damage" under Florida law.  In discussing insurance policies substantively identical to the Policy, the Florida Supreme Court has explained that the cost of repairing defective work is not "property damage," but the cost of repairing damage to the completed project "that occurs as a result of the defective work" is "property damage" under the Policy.  U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 890-91 (Fla. 2007).  However, when items purchased separately by the homeowners "are damaged as a result of the faulty [workmanship], then there is [property damage]" as defined by the Policy.  Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So. 2d 1241, 1249 (Fla. 2008).  In other words, there is insurance coverage if "the faulty workmanship has damaged some 'otherwise nondefective' component of the project."  Amerisure Mut. Ins. Co. v. Auchter Co., 673 F.3d 1294, 1306 (11th Cir. 2012) (quoting J.S.U.B., 979 So. 2d at 889).

Here, these definitions mean that items such as the tile Plaintiffs purchased that was damaged by the negligent installation, the electrical appliances that had to be replaced because of the faulty electrical system, and the brick that was damaged by the negligent application of Boral coating, constitute "property damage" for which Mid-Continent is liable.  It is a closer question whether the cost of replacing the balcony is "property damage" under the policy.  Plaintiffs argue that the cost of replacing the balcony is "property damage"

---

Stat. § 627.426(2)(a) (prohibiting insurer from denying coverage based on a coverage defense unless insurer gives written notice to insured within 30 days after insurer knew or should have known of the coverage defense).

because the balcony was irreparably damaged by the time the defective construction was discovered so that replacement of the balcony was the only way to effect the necessary repairs to the garage. Mid-Continent points the Court to the Eleventh Circuit Court of Appeals' recent Amerisure decision, contending that this decision is dispositive of the issue. But in Amerisure, the faulty workmanship did not cause any other damage to the project. See Amerisure, 673 F.3d at 1307 (The property owner "has never alleged that any part of the [project] other than the roof was damaged by the defective roof."). Thus the court had no cause to address whether faulty workmanship that does cause other damage and that must be repaired to repair the other damage can constitute property damage under the Policy.

The only evidence in this case is that the balcony was beyond repair once the damage was discovered. In other words, to repair the garage, it was necessary to completely replace the defectively constructed balcony. In this specific situation, the cost of replacing the balcony is "property damage" under the Policy.

All of the damage in this case, whether to the balcony itself or the garage to which the balcony is attached, or to the marble tiles or the mud base on which the tiles rest, or to the brick or the coating covering the brick, is "property damage" for which the Policy provides coverage. Mid-Continent is obliged to indemnify Cronk Duch in full for all of the items of damage claimed in the state-court judgment.

**C.     Attorney's Fees Assignment**

As discussed briefly above, Cronk Duch assigned its claims against Mid-Continent to Plaintiffs in an agreement dated May 25, 2012.  (Pls.' Ex. 3.)  According to Mid-Continent, that agreement assigns to Plaintiffs all of Cronk Duch's claims except the $12,000 in attorney's fees Cronk Duch incurred defending Plaintiffs' state-court lawsuit.  Plaintiffs argue that the agreement's reference to the attorney's fees is to ensure that Cronk Duch would recover its fees in the same percentage as Plaintiffs' ultimate recovery from Mid-Continent.

The agreement provides that Cronk Duch assigned to Plaintiffs Cronk Duch's "right to any proceeds obtained from Mid-Continent in that claim save and except for attorney's fees and costs in the sum of $12,737.46 incurred by Cronk Duch in the defense of this action through the date of this Agreement." (Id. at 5, ¶ B.)  Mid-Continent argues that this sentence unambiguously carves out the attorney's fees from Plaintiffs' recovery, so that Mid-Continent should not be liable to Plaintiffs for this amount.  But Mid-Continent's reading of the agreement ignores the plain language of the quoted passage, which provides that Plaintiffs may keep all proceeds from this lawsuit save the amount of Cronk Duch's attorney's fees.  Mid-Continent's argument also ignores the next sentence of the agreement, which provides that "[i]n the event there is a compromise settlement of the claim in which Carithers recover only a percentage of the sum sued for, then Cronk Duch shall be entitled to payment of that same percentage of his attorney's fees and costs from the settlement

9

funds." (Id.)  Thus, the agreement clearly contemplates that Cronk Duch's attorney's fees will be part of whatever recovery Plaintiffs secure from Mid-Continent, and that Plaintiffs will not retain the fees but will pay that amount (or a percentage of that amount) to Cronk Duch.

And even if the agreement did not allow Plaintiffs to recover Cronk Duch's fees, Mid-Continent is indisputably liable for those fees and must reimburse Cronk Duch for them. Mid-Continent, after all, failed to defend Cronk Duch when it had the duty to do so.  It seems inefficient in the extreme to force Cronk Duch to file a separate lawsuit to recover those fees, when Plaintiffs have agreed to pay them should Plaintiffs secure a recovery in this case.

**CONCLUSION**

The evidence establishes that Mid-Continent had the duty to indemnify its insured for all of the items of damage in the state-court judgment.  (Pls.' Ex. 1.)  Mid-Continent must also pay its insured's attorney's fees incurred in the state-court lawsuit.  However, the parties have not provided the Court with any calculation of interest on either of those amounts, and thus the Court will reserve the entry of judgment pending the parties' submissions on pre- and post-judgment interest, if appropriate.  The parties have 14 days from the date of this Order to file simultaneous submissions on the propriety and amount of such interest.

Accordingly, **IT IS HEREBY ORDERED that** Defendant Mid-Continent had the duty to indemnify its insured in the state-court lawsuit brought by Plaintiffs in an amount to be determined.

Dated:   February 10, 2014

                                              *s/Paul A. Magnuson*
                                              Paul A. Magnuson
                                              United States District Court Judge